## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-01174-SCT

*NORMA CHRISTINE MARTIN*

*v.*

*JAMES SIDNEY COOP AND SANDRA L. COOP*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/22/95 |
| TRIAL JUDGE: | HON. PERCY LEE LYNCHARD JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | STEVEN G. ROBERTS |
| ATTORNEY FOR APPELLEES: | GERALD W. CHATHAM SR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 5/8/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/29/97 |

**BEFORE PRATHER, C.J., PITTMAN AND SMITH, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case is an appeal from a decree awarding the grandparents of Jesse Robert Coop ("Jesse") visitation, pursuant to Miss. Code Ann. §§ 93-16-1 et seq. The Coops are the parents of Jesse's deceased father. The following visitation was granted to the grandparents: every second and fourth weekend of each month; eight different holidays in alternating years (with Christmas comprising four days); each grandparent's birthday; and four weeks during the summer. This visitation totals 86 days per year in even years and 81 days per year in odd years.

¶2. Norma Christine Martin, Jesse's mother appealed to this Court asserting the following as error:

> **I. The trial court erred in granting the petition for grandparent visitation to the natural paternal grandparents after the death of the minor child's father, where the minor child lives in an intact nuclear family, and visitation by the grandparents has not been unreasonably denied.**

> **II. The amount of visitation granted to the grandparents is excessive and thus not in the best interests of the child.**

# DISCUSSION OF LAW

## I.

¶3. The review of the chancellor's decision is one of manifest error. As we have stated before, absent an abuse of discretion, we will uphold the decision of the chancellor. This Court will not disturb the factual findings of the chancellor unless said factual findings are manifestly wrong or clearly erroneous. **_McAdory v. McAdory,_** 608 So. 2d 695, 699 (Miss. 1992).

¶4. Section 93-16-3(1) of the Mississippi Code Annotated provides that when a parent "of a minor child dies, either parent of the child's parents who . . . has died may petition the . . . chancery court in which the child resides, and seek visitation rights with such child." Miss. Code Ann. § 93-16-3(1) (1994 rev. ed.). The chancellor in this case found that under this section the petitioners are in fact the grandparents of Jesse and that their son is deceased. Thus, all the proof necessary under § 93-16-3(1) was present and, therefore, the grandparents should be awarded visitation. The statute reads very clearly and applies to this case. The grandparents had a statutory right to petition the court to grant them visitation and they proved the necessary facts. Thus, the chancellor did not err in granting the grandparents visitation.

¶5. Norma challenges the chancellor's ruling by contending that § 93-16-3 is unconstitutional. She asserts:

1. Section 93-16-3(1) is unconstitutional when applied to an existing nuclear family.

2. Section 93-16-3(2) is unconstitutional on its face.

3. Section 93-16-3(2) is unconstitutional as applied in the present case where the grandparents were not unreasonably denied visitation.

Norma's challenges to the constitutionality of § 93-16-3(2) are not appropriate for consideration or review by this Court. The chancellor did not rule under subsection two. He specifically stated that he did not have to proceed to or use that subsection because he found that subsection one allowed the grandparents visitation. Therefore, the constitutional challenge to subsection two does not have to be considered at this time by this Court because that particular subsection was not applied in this case.

¶6. Norma also challenges the constitutionality of § 93-16-3(1) when it is applied to an "existing nuclear family." She contends that in order to grant visitation under subsection one, there must be a disruption in the family unit. She argues that there has been no disruption in her family unit because there is a reconstituted family consisting of she and her husband and Jesse.

¶7. This argument is unpersuasive because "disruption of the nuclear family" is not a requirement of the statute. Even if it was a requirement, Norma's contention would fail because the disruption lies in the death of the natural father. The Legislature obviously intended that the father's parents have the right to petition the court for visitation privileges. This is the clear language of the statute. It is not ambiguous.

¶8. The Fifth and Fourteenth Amendments to the United States Constitution proscribe governmental interference with individual liberties such as a parent's right to determine his child's care, custody and

management. *See Santosky v. Kramer,* 455 U.S. 745, 753 (1982). However, this right is not absolute. *See Wisconsin v. Yoder,* 406 U.S. 205 (1972) (parental decisions may be curtailed by the State as in the best interest of the child). The Mississippi Legislature has determined that a grandparent may petition the court for visitation if a parent has died. This statute does not deprive the parents of their right to raise their children by determining the care, custody and management of the child. Mississippi's grandparent visitation act does not intrude upon this parental liberty, and as such, it is constitutional.

¶9. The chancellor did not err in granting visitation to the grandparents under Mississippi Code Annotated § 93-16-3(1) (1994 rev. ed.).

## II.

¶10. Norma's final argument is that the chancellor erred in awarding excessive visitation. With this argument, we agree. In support of her contention, Norma cites *Sketo v. Brown,* 559 So. 2d 381 (Fla. Dist. Ct. App. 1990). It should be noted that in *Sketo*, which is factually the same as the case *sub judice*, the Court held that the statute allowing grandparent visitation, if one of the parents is deceased, is not unconstitutional if the visitation is in the best interest of the child. *Sketo,* 559 So 2d at 382.

¶11. The Court in *Sketo*, after finding the statute constitutional, proceeded to review the reasonableness of the order granting visitation. It held that the record did not reflect that it was in the child's best interest to allow extensive visitation with the grandparent. Therefore, the Court reversed the case and remanded it to the lower court so that the lower court could set forth specific findings of fact to support the extensive visitation. *Sketo,* 559 So. 2d at 383.

¶12. In setting forth his findings to support the visitation in this case, the chancellor stated that under § 93-16-5, he had the power to set "reasonable rights of visitation." The opinion of the chancellor was that

> [r]easonable rights of visitation are always interpreted by this Court, except in unusual circumstances, as being those set forth by what is sometimes referred to as the "Farese Visitation Schedule." I see no reason in this circumstances [sic] that the term reasonable rights of visitation should be anything short of that. Based upon that I'm going to award unto the Plaintiffs all visitation which would normally be awarded to a natural parent under the "Farese Visitation Schedule". . .

¶13. This Court has stated that "[v]isitation and restrictions placed upon it are within the discretion of the chancery court." *White v. Thompson,* 569 So. 2d 1181, 1185 (Miss. 1990). This Court is bound to accept the findings of the chancellor unless he is manifestly wrong or there is clearly an abuse of discretion. *See Newsome v. Newsome,* 557 So. 2d 511, 514 (Miss. 1990); and *Clark v. Myrick,* 523 So. 2d 79, 80-81 (Miss. 1988). In this case, we find that the chancellor abused his discretion in awarding the grandparents the same visitation that he would award to a non-custodial parent. Grandparents do not stand in lieu of or in the shoes of the deceased parent. As this Court stated in *Settle v. Galloway,* 682 So. 2d 1032, (Miss. 1996), in expressing its concern over excessive grandparent visitation

[n]atural grandparents have no common-law "right" of visitation with their grandchildren. ***Matter of Adoption of a Minor,*** 558 So. 2d 854, 856 (Miss. 1990). Such a right must come from a legislative enactment. *Id.; **Olson v. Flinn,*** 484 So. 2d 1015, 1017 (Miss. 1986). Although the Mississippi Legislature created this right by enacting § 93-16-3, it is clear that natural grandparents do not have a right to visit their grandchildren that is as comprehensive as the rights of a parent.

***Settle v. Galloway,*** 682 So. 2d 1032, 1035 (Miss. 1996). It is clear to this Court that visitation granted to grandparents should not be equivalent to that which would be granted to a non-custodial parent unless the circumstances overwhelmingly dictate that it should be. The chancellor in this case granted visitation equal to that of a non-custodial parent, but the grandparents have none of the responsibility of the non-custodial parent. It is up to the parents to provide all support financially, socially and otherwise for their child, and to provide care, custody and management of the child.

¶14. In determining the amount of visitation that grandparents should be granted in this situation, some guidelines by this Court may be helpful. As always, the best interest of the child must be the polestar consideration. The visitation should be less than that which would be awarded to a non-custodial parent, unless the circumstances overwhelming dictate that that amount of visitation is in the best interest of the child, and it would be harmful to the child not to grant it. The following factors should be considered by the chancery court in determining grandparent visitation, and no one should be weighed more heavily than the others.

> 1. The amount of disruption that extensive visitation will have on the child's life. This includes disruption of school activities, summer activities, as well as any disruption that might take place between the natural parent and the child as a result of the child being away from home for extensive lengths of time.

> 2. The suitability of the grandparents' home with respect to the amount of supervision received by the child.

> 3. The age of the child.

> 4. The age, and physical and mental health of the grandparents.

> 5. The emotional ties between the grandparents and the grandchild.

> 6. The moral fitness of the grandparents.

> 7. The distance of the grandparents' home from the child's home.

> 8. Any undermining of the parent's general discipline of the child.

> 9. Employment of the grandparents and the responsibilities associated with that employment.

> 10. The willingness of the grandparents to accept that the rearing of the child is the responsibility of the parent, and that the parent's manner of child rearing is not to be interfered with by the grandparents.

¶15. As stated before, none of these factors should receive more weight in the chancellor's analysis

than any other. These factors are further not all-inclusive. The chancellor should weigh all circumstances and factors he feels to be appropriate.

## CONCLUSION

¶16. The trial court did not err in granting visitation to Jesse's grandparents. However, the court did err in awarding excessive visitation. So that the visitation well might interfere with duties and responsibilities of the mother, this case is reversed and remanded for reconsideration of the amount of visitation consistent with this opinion.

¶17. **REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**PRATHER AND SULLIVAN, P.J., BANKS, McRAE, AND SMITH, JJ., CONCUR. MILLS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND ROBERTS, J.**


### MILLS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:


¶18. I agree with the majority's opinion that the chancellor did not err in granting visitation to the grandparents of Jesse Robert Coop; however, I disagree that the visitation granted by the chancellor was inherently excessive. The chancellor could well have found the "Farese Visitation Schedule" appropriate under the circumstances of the case *sub judice*. Therefore, reviewing the chancellor's decision under the manifest error rule, the chancellor did not abuse his discretion since the factual findings were not manifestly wrong or clearly erroneous. Therefore, I would affirm the lower court's decision.

**LEE, C.J. AND ROBERTS, J., JOIN THIS OPINION.**